UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STACI-JO ONEQUE BARNES,

     Plaintiff,

v.                                      Case No: 6:14-cv-762-Orl-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

     Plaintiff, Staci-Jo Oneque Barnes, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number) and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to 42 U.S.C. § 405(g).

### I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

#### A. Social Security Act Eligibility

     The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382a(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't. of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *see* 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(ii).   If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*.  At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work.  20 C.F.R. §§ 1520(a)(4)(iv), 1520(f).  If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v).  If the claimant is capable of performing other work, she will be found not disabled. *Id*.  In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).  There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the

use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d at 1278 n.2.

### C.  Procedural History

On August 11, 2009, Plaintiff filed an application for SSI alleging disability beginning October 15, 2008. (Tr. 209). Plaintiff's application was denied initially on January 5, 2010, and on reconsideration on June 29, 2010. (Tr. 156, 164). A hearing was held before Administrative Law Judge Brendan F. Flanagan (the "ALJ") on June 13, 2011. (Tr. 44-85). The ALJ issued an unfavorable decision on August 25, 2011. (Tr. 24-34). On February 4, 2013, the Appeals Council denied Plaintiff's request for review. (Tr. 3). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on May 15, 2014.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ noted that Plaintiff had engaged in work activity since August 11, 2009, the date of Plaintiff's application, but deferred from making a determination whether the work was substantial gainful activity because the ALJ's decision was based on other grounds. (Tr. 26). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: paranoid schizophrenia, depression, and anxiety. (Tr. 26). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in "20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." (Tr. 28).

Before proceeding to step 4, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to

- 4 -

> Perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to concentrate and persist for 2 hour segments; is limited to work requiring only occasional changes in the work setting, occasional interaction with the public or co-worker, or supervisers [sic]; and is unable to meet fast paced, high production demand.

(Tr. 29).  At step four, the ALJ found that Plaintiff is unable to perform her past relevant work as an insurance agent.  (Tr. 32).  At step five, the ALJ relied on the testimony of a vocational expert to find that Plaintiff is able to perform the requirements of such occupations as cleaner II, mailroom clerk, warehouse checker, and office helper.  (Tr. 34).

## II.   Analysis

Plaintiff raises two issues on appeal:  (1) whether the ALJ erred by failing to properly weigh the medical evidence, and (2) whether the ALJ erred by failing to properly evaluate Plaintiff's credibility.  The Court addresses each issue in turn.

### a)   Whether the ALJ erred by failing to properly weigh the medical evidence.

Plaintiff argues that the ALJ erred in according "some weight" to the opinions from non-examining state agency psychologists, while "rejecting" the opinions from treating, board-certified psychiatrist Adly Thebaud, M.D., and according "little weight" to the opinion of one-time examining psychologist Benjamin Cohen, Ph.D.  (Doc. 24 p. 11-12).  Plaintiff argues that the ALJ improperly relied on Plaintiff's activities of daily living, her Global Assessment of Functioning (GAF) scores, and the opinions of the non-examining state agency psychologists to reject Dr. Thebaud's opinions.  (Doc. 24 p. 11-14).  Plaintiff contends that Dr. Thebaud based his opinions on appropriate clinical and diagnostic psychiatric evidence, and his opinion should have been accorded controlling weight.   (Doc. 24 p. 14).   Plaintiff further argues that the ALJ mischaracterized the record by finding that Dr. Cohen based his opinion on Plaintiff's subjective complaints and did not review the records from the relevant time period at issue, as Dr. Cohen

specifically stated that he reviewed Plaintiff's treatment records in connection with his evaluation. (Doc. 24 p. 17).

In response, Defendant argues that the ALJ provided good reasons, supported by substantial evidence, for rejecting the opinions of Dr. Thebaud. (Doc. 25 p. 6). Defendant argues that Dr. Thebaud failed to provide sufficient objective medical evidence to support his opinions, in either his opinions or his clinical records. (Doc. 25 p. 6). Likewise, Defendant argues that substantial evidence supports the ALJ's decision to give little weight to the opinion of Dr. Cohen. (Doc. 25 p. 14). Plaintiff contends that Dr. Cohen's opinion was not entitled to any special deference or consideration because he was only a one-time examiner and not a treating doctor. (Doc. 25 p. 14). Defendant argues that Dr. Cohen failed to provide objective medical findings to support his opinion, and his opinion is inconsistent with the record as a whole. (Doc. 25 p. 14-16).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has held that good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3)

treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

**1) Dr. Thebaud**

The record shows that Dr. Thebaud first evaluated Plaintiff on January 6, 2009. (Tr. 395-399). Although the records are largely illegible, they reflect that Plaintiff suffered from anxiety and depression. (Tr. 395). She described symptoms of feeling "listless," crying spells, an inability to relax, a belief that she was "under surveillance," and feelings of depression. (Tr. 395). A mental status examination revealed a dysphoric and anxious mood. (Tr. 398). The diagnoses are partially illegible, but include a diagnosis of rule-out paranoid delusional disorder. (Tr. 398). Plaintiff' GAF score was 50. (Tr. 398). An addendum noted that Plaintiff mother stated Plaintiff was having auditory and visual hallucinations. (Tr. 398). Dr. Thebaud prescribed Zoloft, Abilify, and Haloperidol. (Tr. 399).

On January 20, 2009, Plaintiff returned to Dr. Thebaud for a follow-up. (Tr. 394). Again, although the records are largely illegible, they reflect that Plaintiff did not take the Abilify and expressed paranoid thoughts. (Tr. 394). Dr. Thebaud diagnosed Plaintiff with schizophrenia, paranoid type, and assessed a GAF score of 50. (Tr. 394). Plaintiff was prescribed Zoloft and Abilify. (Tr. 392).

On February 19, 2009, Plaintiff returned to Dr. Thebaud for a follow-up. (Tr. 393). Dr. Thebaud recorded that Plaintiff was "still irritable" and "easily upset" with a "low frustration tolerance." (Tr. 393). Plaintiff was diagnosed with schizophrenia, paranoid type, and was assessed a GAF score of 51. (Tr. 393). Plaintiff's dose of Abilify was increased. (Tr. 393).

On April 21, 2009, Plaintiff returned to Dr. Thebaud for a follow-up. (Tr. 392). Dr. Thebaud noted that Plaintiff continued to have paranoid delusions despite medication compliance (Tr. 392). Dr. Thebaud assessed a GAF score of 51. (Tr. 392). Plaintiff's medications were refilled. (Tr. 392).

On August 20, 2009, Plaintiff returned to Dr. Thebaud for a follow-up. (Tr. 390). Dr. Thebaud's notes are largely illegible, but indicate that Plaintiff exhibited paranoid ideation, low motivation, and was unable to concentrate. (Tr. 390). Dr. Thebaud assessed Plaintiff's GAF score as 52. (Tr. 390).

On May 10, 2010, Dr. Thebaud completed a Psychiatric/Psychological Impairment Questionnaire. (Tr. 518-525). The doctor stated that Plaintiff continued to be treated monthly, most recently on May 4, 2010. (Tr. 518). Dr. Thebaud diagnosed schizophrenia, paranoid type. (Tr. 518). Dr. Thebaud found Plaintiff's GAF score was 50 with a low score of 48 in the previous year. (Tr. 518). Plaintiff' prognosis was "fair." (Tr. 518). Dr. Thebaud indicated that the clinical findings that supported his diagnosis were:  oddities of thought, illogical thinking, delusions or hallucinations, and paranoia or inappropriate suspiciousness. (Tr. 519). Plaintiff's primary symptoms were psychosis with auditory hallucinations and paranoia. (Tr. 520). The psychiatrist stated the symptoms and limitations detailed in the questionnaire were present since he began treating Plaintiff in January 2009. (Tr. 525). Dr. Thebaud opined that Plaintiff was markedly limited (defined as effectively precluded) in the ability to understand and remember one or two step instructions; maintain attention and concentration for extended periods; sustain ordinary routine without supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of

rest periods; and, interact appropriately with the general public.  (Tr. 520-522).   Dr. Thebaud also

opined that Plaintiff was moderately limited (defined as significantly limited but not totally

precluded) in the ability to remember locations and work-like procedures; carry out detailed

instructions; perform activities within a schedule, maintain regular attendance, and be punctual

within customary tolerance; make simple work-related decisions; accept instructions and respond

appropriately to criticism from supervisors; get along with  coworkers or peers without distracting

them or exhibiting behavioral extremes; respond appropriately to changes in the work setting;

travel to unfamiliar places or use public transportation; and, set realistic goals or make plans

independently.   (Tr. 520-523).   Dr. Thebaud opined that Plaintiff experienced episodes of

deterioration or decompensation in work or work-like settings that caused her to withdraw from

that situation and/or experience an exacerbation of signs and symptoms. (Tr. 523).  Dr. Thebaud

found that Plaintiff was not a malingerer and that she was incapable of tolerating even low stress

work due to her tendency to decompensate under stress.  (Tr. 524).  Dr. Thebaud found that

Plaintiff had good days and bad days, and opined that Plaintiff would be absent from work, on the

average, more than three times a month as a result of her impairments or treatment.  (Tr. 524-25).

On May 23, 2011, Plaintiff had a follow-up with Dr. Thebaud, but the notes are again

illegible (Tr. 562-563).  The same day, Dr. Thebaud completed a second Psychiatric/Psychological

Impairment Questionnaire. (Tr. 553).  Dr. Thebaud's opinion was generally unchanged from the

opinion detailed in his earlier questionnaire from May 10, 2010.  (Tr. 553-563).

In his opinion, the ALJ addressed Dr. Thebaud's opinion as follows:

> On May 10, 2010 and May 23, 2011, Dr. Thebaud completed medical
> source statements indicating the claimant had moderate or marked
> limitations in understanding and memory; mild to marked limitations in
> sustained concentration and persistence; mild to marked limitations in
> social interaction; and mild to marked limitations in adaptation.  The
> undersigned rejects these opinions because they are not consistent with the

- 9 -

claimant's report of activities and capabilities.  Furthermore, the GAF scores assigned by Dr. Thebaud are mostly in the 50's, which do not indicate complete inability to function and are not consistent with his medical source statements.

The medical records and the testimony of the claimant reflect the claimant is participating in a clinical trial of Abilify conducted by Dr. Thebaud. The claimant is paid for her office visits and the Abilify is provided free. However, the claimant said the Abilify was not effective as her prior medication, Zoloft.  The fact that the claimant is paid to visit Dr. Thebaud may give a monetary incentive for the treatment rather than a need for care.  Significantly, in his medial source statement, Dr. Thebaud failed to disclose the treatment arrangement with the claimant, including the fact the claimant is being paid for the visits.  Finally, Dr. Thebaud does not mention the fact that the claimant had been doing better on her prior medication of Zoloft, which he changed to Abilify as part of his clinical trial of that drug.  All these facts significantly undermine the reliability and objectivity of Dr. Thebaud's opinions.

(Tr. 31-32).

In this case, the Court finds that the ALJ failed to articulate good cause for his decision to "reject" Dr. Thebaud's opinions.  The ALJ's decision places great emphasis on the fact that Plaintiff participated in a clinical trial of Ability conducted by Dr. Thebaud.  While the Court sees how this fact may be relevant to accessing Plaintiff's credibility, given the monetary incentive to visit Dr. Thebaud's office, the Court is at a loss as to how this fact undermines the reliability and objectivity of Dr. Thebaud's opinions.  The implication that Dr. Thebaud's opinions were rendered simply because Plaintiff was participating in a drug study through his office seems an unwarranted suggestion of dishonest conduct.  The ALJ cites to no specific instances of bias or any evidence that Dr. Thebaud provided an untruthful opinion of Plaintiff's abilities.  Such speculation does not constitute substantial evidence.

In addition, it is unclear as to how Dr. Thebaud's decision to prescribe Abilify undermines his opinions.  Plaintiff's treatment records show that Plaintiff was taking both Abilify and Zoloft at the times she visited Dr. Thebaud for her initial evaluation and follow up visits.  (Tr. 390, 392,

393, 394, 399).  At some point, Plaintiff was taken off of Zoloft (Tr. 73-76) when she began to participate in a clinical study in which she received Abilify for free. (Tr. 73).  The ALJ takes issue with the fact that Dr. Thebaud does not mention in his opinions that Plaintiff did better on Zoloft than Abilify, but Plaintiff testified at the administrative hearing that she never told Dr. Thebaud that she prefers Zoloft to Abilify.  (Tr. 74).  The record reflects that Plaintiff's prescription for Zoloft was continued at some point before her Psychological Evaluation performed by Dr. Cohen on June 23, 2011.  (Tr. 578).

Defendant apparently agrees that Plaintiff's participation in a clinical study is a weak reason to reject Dr. Thebaud's opinions, as Defendant does not attempt to justify the ALJ's reliance on this fact in rejecting Dr. Thebaud's opinions.  Instead, Defendant devotes approximately five pages in the Memorandum in Support of the Commissioner's Decision to demonstrating that Dr. Thebaud's opinions are inconsistent with the record as a whole.  (Doc 25 p. 9-14).  The ALJ's opinion makes clear, however, that Dr. Thebaud's opinions were not rejected because they were inconsistent with the record as a whole.  Instead, the ALJ explained that he rejected Dr. Thebaud's opinions because they are "not consistent with the claimant's report of activities and capabilities" and because "the GAF scores assigned by Dr. Thebaud are mostly in the 50's, which do not indicate complete inability to function and are not consistent with his medical source statements." (Tr. 31).  These conclusory statements, without further explanation, do not constitute good cause.

The record indicates that Plaintiff's daily activities included writing, reading, shopping, riding her bike, taking care of her personal needs, preparing simple meals, performing household chores, occasionally attending church and singing in the choir, and going to the gym and library. (Tr. 28, 30, 65, 68-71, 238-45, 269-76, 279-86, 391).  This evidence does not provide good cause for the ALJ to reject the opinions of Dr. Thebaud.  As Plaintiff notes, she testified that she only

occasionally rides her bicycle around the neighborhood, only occasionally does the dishes, that she no longer goes to church for lack of motivation, and that she had not been to the gym in a year at the time of her hearing.  (Doc. 24 p. 22).  "The Eleventh Circuit has recognized that 'participation in everyday activities of short duration, such as housework or fishing,' do not disqualify a claimant from disability." *Corron v. Comm'r of Soc. Sec.*, 2014 WL 235472, at *6 (M.D. Fla. Jan. 22, 2014) (quoting *Lewis v. Callahan*, 123 F.3d 1436, 1441 (11th Cir. 1997)).  In this case, Plaintiff has the severe impairments of paranoid schizophrenia, depression, and anxiety.  Evidence that Plaintiff occasionally exercises and goes to church does not constitute good cause for rejecting Dr. Thebaud's opinions that Plaintiff's mental impairments prevent her from working.

Likewise, without further explanation, the Court cannot find that Plaintiff's work activity after her alleged onset date constitutes good cause to reject Dr. Thebaud's opinions.  Plaintiff notes that despite that fact that she worked sporadically and part-time work after her onset date, the evidence shows that her mental conditions were the cause of her stopping such work, and that her parents provided significant assistance.  (Tr. 55-61).  For example, Plaintiff testified that while working as an insurance salesperson, her parents would accompany her on sales visits with clients and would help with the sales pitch.  (Tr. 56).  Plaintiff's potential clients were friends and family members, and she was eventually let go because she could not make her sales quotas.  (Tr. 56-57).  As a tutor, Plaintiff testified that her parents had to drive her to work as she sometimes would get confused as to the roads.  (Tr. 64).

Finally, the Court does not find that Dr. Thebaud's assessment of Plaintiff's GAF scores in the 50's constituted good cause to reject Dr. Thebaud's opinion.  The record shows that while Dr. Thebaud did assess GAF scores greater than 50, he also assessed scores of 50 (Tr. 398, 518), evidencing serious symptoms or any serious impairment in social or occupational functioning.  *See*

American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000). In this way, some of Dr. Thebaud's GAF scores **do** supported his opinions, contrary to the ALJ's claim. The ALJ's conclusory finding that Dr. Thebaud's GAF scores somehow undermine his credibility, without further explanation, cannot constitute good cause.

As the ALJ failed to provide good cause for his decision to "reject" the opinions of Dr. Thebaud, the Court finds that this case is due to be reversed and remanded.

### 2) **Dr. Cohen**

The record reflects that Dr. Cohen performed a Psychological Evaluation of Plaintiff on June 23, 2011. (Tr. 581-85). Dr. Cohen's report provided that he used the following evaluation procedures: clinical interview, psychosocial history, mental status examination, review of records, and the Millon Clinical Multiaxial Inventory-III (MCMI-III). (Tr. 581). A mental status examination revealed a depressed mood and affect, tearfulness, soft and slow speech, slowed motor activity, below average memory, and fair insight and judgment. (Tr. 583). The MCMI-III was found to be a valid evaluation of Plaintiff's impairments and was consistent with evidence that she tends to be dependent on others, withdrawal, and fearfulness. (Tr. 583-84). Dr. Cohen noted that Plaintiff reported many symptoms associated with anxiety and depression. (Tr. 584). Dr. Cohen's diagnostic impression was major depressive disorder, severe delusional disorder, persecutory type, and dependent personality disorder with avoidant features. (Tr. 585). Dr. Cohen opined that Plaintiff had moderate to severe limitations in activities of concentration and memory and severe difficulties with socialization with a risk of becoming verbally and physically aggressive towards others in a work setting. (Tr. 585).

Dr. Cohen also completed a Psychiatric/Psychological Impairment Questionnaire form on June 23, 2011. (Tr. 573-80). Dr. Cohen assessed Plaintiff a GAF score of 45, noted that her

prognosis was guarded, and that her clinical findings included poor memory, oddities of thought, appetite for disturbance with weight change, sleep disturbance, social withdrawal or isolation, delusions, decreased energy, anhedonia or pervasive loss of interests, psychomotor retardation, paranoia or inappropriate suspiciousness, generalized persistent anxiety, feelings of guilt/worthlessness, difficulty thinking or concentrating, hostility and irritability, suicidal ideation, and pathological dependence or passivity. (Tr. 574). Dr. Cohen stated that his findings were based on a clinical interview, a mental status evaluation, the claimant's history, and personality testing. (Tr. 574).

Dr. Cohen opined that Plaintiff was markedly limited in the ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; work in coordination with or proximity to others without being distracted by them; complete a normal workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and, set realistic goals or make plans independently. (Tr. 576-578). Dr. Cohen also opined that Plaintiff was moderately limited in the ability to remember locations and work-like procedure; sustain ordinary routine without supervision; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate precautions; and, travel to unfamiliar places or use public transportation. (Tr. 576-78).

Dr. Cohen noted that Plaintiff experienced episodes of decompensation or deterioration in work or work-like settings that caused her to withdraw from that situation and/or experience an exacerbation of signs and symptoms evidenced by her history of verbal and physical aggression (Tr. 578). Dr. Cohen found that Plaintiff is not a malingerer. (Tr. 579). Dr. Cohen estimated that Plaintiff would be absent from work, on the average, more than three times a month (Tr. 580).

In his opinion, the ALJ addressed Dr. Cohen's opinions and explained his reasoning for giving it little weight as follows:

> On June 23, 2011, Dr. Cohen opined the claimant had moderate to severe impairments in her ability to perform work-related mental activities (concentration and memory) and severe impairment in her ability to socialize and adapt at work. He stated the claimant would be at risk for psychological decompensation in the future if subjected to job-related stressors, particularly during severe episodes of depression. Based on this one-time evaluation, Dr. Cohen opined that the claimant's limitations applied four years earlier, to 2007. It is noted that this opinion is based on a one-time evaluation of the claimant and the examiner apparently relied on the subjective report of symptoms and limitations provided by the claimant. There is no evidence that Dr. Cohen was provided reports of the claimant's prior consultative psychological evaluations or treatment records of the claimant's treating psychiatrist contained in the current record. Indeed, Dr. Cohen does not mention that in 2009, the claimant specifically denied any memory loss, mental disturbance, suicidal ideation, hallucinations, or paranoia and the examining provider indicated the claimant had no signs of depression, anxiety, or agitation. Dr. Cohen also fails to address the paucity of treatment from 2006-2009, which is not consistent with his finding of limitation dating back to 2007. It is noted that Dr. Cohen's assessed GAF score of 45, which indicates serious symptoms and impairment in functioning, is not consistent with the claimant's documented activities and level of functioning. Accordingly, little weight is given to Dr. Cohen's opinion.

(Tr. 32) (the ALJ's citations to the record omitted).

Whether the ALJ erred in according little weight to Dr. Cohen's opinion is a much closer call than the ALJ's treatment of the opinions of Dr. Thebaud. As a one-time examiner and not a treating physician, Dr. Cohen's opinion was not entitled to any special deference or consideration.

*See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).  Nevertheless, as this case is already being remanded for the ALJ to reassess the opinions of Dr. Thebaud, certain inconsistencies in the ALJ's treatment of Dr. Cohen's opinion cause the Court to remand this case for a reevaluation of this opinion as well.  For example, while the ALJ claims that there is no evidence that Dr. Cohen was provided reports of Plaintiff's prior psychological evaluations or treatment records from her treating physicians, Dr. Cohen specified in his Psychological Evaluation that he had reviewed Plaintiff's record and noted that Plaintiff was currently receiving psychiatric treatment and counseling from Drs. Thebaud and Romaine at Family Psychiatric Services for treatment of Major Depressive Disorder, anxiety, and schizophrenia.  (Tr. 581, 582).  In addition, the ALJ's characterization of Dr. Cohen's opinion as based on Plaintiff's subjective report of symptoms is not entirely accurate, given that Dr. Cohen administered an objective test during his psychological evaluation, namely the Millon Clinical Multiaxial Inventory-III test.  (Tr. 581, 583-84).

**b)  Whether the ALJ erred by failing to properly evaluate Plaintiff's credibility**

As the Court is remanding the case for a reevaluation of the opinions of Dr. Thebaud and Dr. Cohen, the Court defers addressing the issue of whether the ALJ erred in evaluating Plaintiff's credibility.

**III.    Conclusion**

The decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  Upon remand, the Commissioner is directed to clearly articulate, citing specific medical evidence, the reasons for rejecting the opinions of Dr. Adley Thebaud and giving the opinion of Dr. Benjamin Cohen little weight.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 22, 2015.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties